CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 2 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal Action No. 7:05cr00074 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **KIERRA DAVINA HODNETT** | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |

Kierra Davina Hodnett has conditionally pled guilty to one count of knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Hodnett and the government stipulated to certain facts and left to the court the question of whether, in the light most favorable to the government, those facts are sufficient to sustain the conviction. The court finds that they are and rejects Hodnett's challenge.

**I.**

On January 10, 2006, Hodnett appeared in open court and entered a plea of guilty to willfully, knowingly and intentionally distributing five grams or more of a mixture or substance containing crack and a conditional plea of guilty to knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The government and Hodnett left to the court the question of whether the stipulated facts are sufficient as a matter of law to support a conviction on the firearm charge. In her plea agreement, Hodnett has agreed to be bound by the court's determination and has waived her right to appeal an adverse ruling.

The government and Hodnett stipulated to the following relevant facts[1]:

---

[1] During Hodnett's guilty plea, a detective from the Roanoke County police recounted the events surrounding the drug transactions in question. The government and Hodnett also agreed to the court's reliance on a DEA investigation report.

1) an informant purchased crack from Hodnett on November 9 and 10, 2004, and on January 11, 2005, purchasing 5.8 grams, 6.5 grams, and 13.7 grams, respectively;

2) the informant inquired about purchasing a gun from Hodnett during the November 9 transaction, at which point Hodnett said she would look into it;

3) the informant inquired about the gun again during the November 10 transaction, at which point Hodnett told him that she had a gun and would discuss an appropriate price with her boyfriend, assuring the informant she would get him a "good deal";

4) the informant and Hodnett spoke on the phone twice on January 11, 2005, ultimately agreeing that the informant would purchase the gun and half an ounce of crack for $600, $475 for the crack and $125 for the gun, that the informant would meet Hodnett that evening, and that the informant would drive Hodnett to a home from which she would retrieve the gun;

5) Hodnett and the informant did meet on the evening of January 11, 2005, and, after the informant exchanged $475 for a quantity of crack, the informant drove Hodnett to a home, at which point, Hodnett entered the home, retrieved an unloaded 9mm wrapped in a plastic bag, re-entered the informant's vehicle, and exchanged the gun for $125.

## II.

In United States v. Lipford, 203 F.3d 259 (4th Cir. 2000), the defendant offered to sell an informant a gun during a drug sale. Through the course of additional conversations and drug sales, the defendant and informant negotiated the purchase of the gun, culminating in the contemporaneous sale of a quantity of crack and the gun. The court ruled that the sale of a firearm in that context constituted use of a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1), reasoning that, when a drug purchaser "offer[s] to purchase not only

2

drugs, but other illegal goods as well," such as a firearm, "the firearm facilitates the drug transaction, making it possible for the drug buyer to get the drug seller to take the risks inherent in selling contraband." Id. at 267.

The circumstances surrounding the transaction in question are quite similar. Over the course of several drug transactions, Hodnett and the informant negotiated a deal, through which the informant would purchase half an ounce of crack from Hodnett and would get a "good deal" on a gun. These negotiations ultimately resulted in a meeting, by the conclusion of which Hodnett had exchanged a quantity of crack and a gun for $600. Viewing the stipulated facts in the light most favorable to the government,[2] the court finds that the gun and drugs were negotiated for and exchanged in a single transaction and that the gun in question facilitated Hodnett's drug sale in a fashion similar to the gun in Lipford: "the handgun in question had at least the potential of attracting [Hodnett] into making the sale of drugs." See id. at 267.

### III.

For the reasons stated herein, the court rejects Hodnett's claim that there is insufficient evidence to support the conviction under § 924(c)(1).

ENTER: This 12th day of January, 2006.

UNITED STATES DISTRICT JUDGE

---

[2] Lipford, 203 F.3d at 265.

3